1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PALOMO, | Case No. CV 14-3547 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.   SUMMARY**

On May 12, 2014, plaintiff Paul Palomo ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; May 14, 2014 Case Management Order ¶ 5.

///

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On July 27, 2010, plaintiff filed an application for Supplemental Security

7    Income.  (Administrative Record ("AR") 20, 114).  Plaintiff asserted that he

8    became disabled on October 5, 2009, due to cervical radiculopathy, lumbar

9    radiculopathy, lumbar spine problems, right ankle sprain/strain, right foot

10   sprain/strain, chronic pain, thoraculompathy [sic], hypertension, and major

11   depressive disorder.  (AR 20, 128).  The ALJ examined the medical record and

12   heard testimony from plaintiff (who was represented by counsel) and a vocational

13   expert on May 1, 2012.  (AR 44-72).

14   On May 18, 2012, the ALJ determined that plaintiff was not disabled

15   through the date of the decision.  (AR 20-31).  Specifically, the ALJ found:

16   (1) plaintiff suffered from the following severe impairments:  lumbosacral neuritis,

17   neck sprain/strain, right ankle and foot pain, hand numbness, cervical and lumbar

18   radiculopathy, gastrointestinal esophageal disease, and depression (AR 22);

19   (2) plaintiff's impairments, considered singly or in combination, did not meet or

20   medically equal a listed impairment (AR 22-23); (3) plaintiff retained the residual

21   functional capacity to perform light work (20 C.F.R. § 416.967(b)) with additional

22   limitations[2] (AR 23-24); (4) plaintiff could not perform his past relevant work (AR

23

24   [1]The harmless error rule applies to the review of administrative decisions regarding
25   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
26   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

27   [2]The ALJ determined that plaintiff:  (i) could stand and walk for at least two to four hours
28   within an eight-hour work day; (ii) could sit for about six hours in an eight-hour work day with

(continued...)

1   30); (5) there are jobs that exist in significant numbers in the national economy
2   that plaintiff could perform, specifically order clerk, assembler, and inspector (AR
3   30-31); and (6) plaintiff's allegations regarding his limitations were not credible to
4   the extent they were inconsistent with the ALJ's residual functional capacity
5   assessment (AR 25).
6          The Appeals Council denied plaintiff's application for review.  (AR 6-11).
7   **III.   APPLICABLE LEGAL STANDARDS**
8          **A.   Sequential Evaluation Process**
9          To qualify for disability benefits, a claimant must show that the claimant is
10  unable "to engage in any substantial gainful activity by reason of any medically
11  determinable physical or mental impairment which can be expected to result in
12  death or which has lasted or can be expected to last for a continuous period of not
13  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
15  impairment must render the claimant incapable of performing the work the
16  claimant previously performed and incapable of performing any other substantial
17  gainful employment that exists in the national economy.  Tackett v. Apfel, 180
18  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).
19         In assessing whether a claimant is disabled, an ALJ is to follow a five-step
20  sequential evaluation process:
21
22
23         [2](...continued)
     the opportunity to alternate positions every 30 minutes; (iii) could occasionally climb stairs, but
24   no ladders, ropes or scaffolds; (iv) could occasionally balance, stoop, kneel, and crouch, but
     never crawl; (v) was limited to occasional reaching bilaterally overhead, frequent handling
25   bilaterally, and frequent fingering bilaterally and in color/field of vision; (vi) should avoid
     moderate exposure to hazardous machines and unprotected heights; (vii) was limited to simple,
26   routine repetitive tasks; (viii) was limited to low stress tasks, defined as permitting occasional
     changes in the work setting; (ix) was limited to frequent interaction with the public and co-
27   workers; and (x) was limited to superficial, "nonconfrontational, no arbitration, and no
     negotiation types of activities."  (AR 23-24).
28

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

## B.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

1    error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2    2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

3    (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4    mind might accept as adequate to support a conclusion."  Richardson v. Perales,

5    402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6    mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

7    Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8          To determine whether substantial evidence supports a finding, a court must

9    "'consider the record as a whole, weighing both evidence that supports and

10   evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

11   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

12   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14   of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

15   **IV.   DISCUSSION**

16      **A.      The ALJ Properly Evaluated the Opinions of Plaintiff's Treating**

17              **Physician**

18              **1.     Pertinent Law**

19         In Social Security cases, courts employ a hierarchy of deference to medical

20   opinions depending on the nature of the services provided.  Courts distinguish

21   among opinions provided by three types of physicians, specifically (1) "those who

22   treat the claimant" (*i.e.*, "treating physicians"); (2) "those who examine but do not

23   treat the claimant" ("examining physicians"); and (3) "those who neither examine

24   nor treat the claimant" ("nonexamining physicians").  Garrison v. Colvin, 759 F.3d

25   995, 1012 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

26   1996)) (quotation marks omitted).  A treating physician's opinion is entitled to

27   more weight than an examining physician's opinion, and an examining physician's

28   opinion is entitled to more weight than a nonexamining physician's opinion.  See

                                           5

id. (citation omitted); see also Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (opinion from treating physician generally given greater weight because such a physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual") (citation and quotation marks omitted).

A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. . . ." 20 C.F.R. § 416.927(c)(2); see Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing id.). Even if not "controlling," a treating physician's opinion often is "entitled to the greatest weight and should [still] be adopted. . . ."[3] Orn, 495 F.3d at 632 (quoting Social Security Ruling ("SSR") 96-2p at 4;[4] quotation marks omitted). "The weight afforded a nonexamining physician's testimony

---

[3]If a treating physician's opinion is not entitled to "controlling" weight, an ALJ must consider multiple factors to determine the weight to afford the treating physician's opinion, including (i) "[l]ength of the treatment relationship and the frequency of examination"; (ii) "[n]ature and extent of the treatment relationship"; (iii) "supportability" (i.e., the amount of "relevant evidence . . ., particularly medical signs and laboratory findings" supporting an opinion and the quality of the "explanation [a treating physician gives] . . . for an opinion"); (iv) "[c]onsistency . . . with the record as a whole"; (v) "[s]pecialization" (i.e., "[whether an] opinion [provided by] a specialist about medical issues related to his or her area of specialty"); and (vi) "[o]ther factors . . . which tend to support or contradict the opinion" (i.e., the extent to which a physician "is familiar with the other information in [a claimant's] case record," or the physician understands Social Security "disability programs and their evidentiary requirements"). 20 C.F.R. § 416.927(c)(2)-(6).

[4]Although they do not carry the "force of law," Social Security Rulings are binding on ALJs. See 20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation marks omitted). Such rulings "reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Molina, 674 F.3d at 1113 n.5 (citations and internal quotation marks omitted); Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).

depends 'on the degree to which [the physician] provide[s] supporting explanations for [such] opinions.'" Garrison, 759 F.3d at 1012 (citations omitted).

A treating physician's opinion is not necessarily conclusive, however, as to a claimant's medical condition or disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject a treating physician's uncontroverted opinion by providing "clear and convincing reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion conflicts with another doctor's opinion, an ALJ may reject the treating opinion "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may demonstrate "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick, 157 F.3d at 725) (quotation marks omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); see also Magallanes, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). An ALJ "must do more than offer [] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

### 2.   Analysis

Plaintiff contends that the ALJ improperly rejected the opinions expressed by Dr. Ronald Schilling, one of plaintiff's treating physicians, in an April 10, 2012 Physical Residual Functional Capacity Questionnaire – specifically, that plaintiff

7

1 | had significant functional limitations which essentially would prevent him from
2 | performing even sedentary work ("Dr. Schilling's Opinions").  (Plaintiff's Motion
3 | at 6-7) (citing AR 739-43).  A remand or reversal is not warranted on this basis
4 | because the ALJ properly rejected Dr. Schilling's Opinions for clear and
5 | convincing, specific and legitimate reasons supported by substantial evidence.

6 |      First, the ALJ properly rejected Dr. Schilling's Opinions because they were
7 | not supported by the treatment notes or objective medical evidence in the record.
8 | See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not
9 | accept the opinion of any physician, including a treating physician, if that opinion
10 | is brief, conclusory, and inadequately supported by clinical findings.") (citation
11 | and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875
12 | (9th Cir. 2003) (treating physician's opinion properly rejected where treating
13 | physician's treatment notes "provide no basis for the functional restrictions he
14 | opined should be imposed on [the claimant]").  For example, there are no progress
15 | notes for plaintiff from Dr. Schilling, nor do the treatment records from the
16 | medical group where Dr. Schilling practiced otherwise reflect that plaintiff had a
17 | disabling condition as defined under Social Security law that lasted for any twelve
18 | month period.  (AR 1089-1146).  In addition, as the ALJ noted, the objective
19 | testing in the record does not support a disabling condition.  For example, a month
20 | after plaintiff's alleged onset date (i.e., on November 5, 2009) a physical
21 | examination of plaintiff reflected (i) manual muscle testing for upper and lower
22 | extremities of 5/5 (AR 271-72); (ii) only slight paracervical spasm, no crepitus,
23 | and a negative Spurling's test despite pain at the cervical spine at extremes of
24 | cervical flexion and extension (AR 272); (iii) the condition of plaintiff's
25 | shoulders, elbows, hands and wrists, hips, knees, and ankles and feet were
26 | generally unremarkable (AR 272-76); (iv) normal ranges of motion for the lumbar
27 | and thoracic spine despite pain at extreme lumbosacral flexion and extension (AR
28 | 274-75); (v) generally unremarkable neurological functioning (AR 276-77); and

(vi) x-rays of the lumbar spine that were negative for acute or significant osseous pathology and normal x-rays of the right foot (AR 277).  (AR 26) (citing Exhibit 5F at 42-54 [AR 268-80]).  A January 14, 2010 supplemental report noted that an examination by the same consulting physician showed some limited range of motion in the lumbar spine, positive straight leg raising test with no leg pain, mild spasm and tenderness of the lumbosacral spine, and pain at extremes of cervical extension with cervical tenderness, but otherwise "generally unremarkable" objective findings.  (AR 26) (citing Exhibit 5F at 30-33 [AR 256-59]).  As the ALJ also noted, although subsequent CT scans and x-rays of plaintiff's spine showed some abnormalities, such findings did not support the extreme limitations noted by Dr. Schilling.  (AR 27, 29) (citing Exhibit 31F [AR 706-27]).  Moreover, as the ALJ noted, although plaintiff continued to seek treatment for back and neck pain, there is no evidence that plaintiff's condition required any more aggressive treatment (*i.e.* emergency treatment or surgery).[5]  (AR 29).

Second, the ALJ properly rejected Dr. Schilling's Opinions as inconsistent with plaintiff's own statements regarding his functional capabilities.  See Morgan, 169 F.3d at 601-02 (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities).  For example, as discussed below, contrary to Dr. Schilling's opinions that plaintiff had disabling limitations, plaintiff stated that he was able to engage in multiple

---

[5]To the extent plaintiff suggests that the ALJ erroneously "rejected [Dr. Schilling's Opinions] because [plaintiff] did not seek emergency room treatment" (Plaintiff's Motion at 7) (citing AR 29), plaintiff's suggestion lacks merit.  Plaintiff's assertion is based on a misreading of the ALJ's decision, which states that plaintiff did not <u>require[]</u> emergency treatment," not that plaintiff "did not <u>seek</u>" such treatment.  (<u>Compare</u> AR 29 <u>with</u> Plaintiff's Motion at 7) (emphasis added).  As the ALJ noted, although plaintiff "presented to the emergency department on two occasions" (*i.e.*, July 8, 2010 and June 14, 2011), objective testing revealed only moderate abnormalities, plaintiff was not admitted for inpatient treatment either time and was treated with medication and discharged the same day.  (AR 25, 27) (citing Exhibits 6F [AR 281-87]; 29F [AR 687-700]).

1    activities of daily living including, among other things, shopping for groceries and

2    automobile parts, driving a car, and "dancing at [] clubs." (AR 25, 29, 151-58,

3    392).

4           Finally, the ALJ properly rejected Dr. Schilling's Opinions, in part, in favor

5    of the conflicting opinions of (1) Dr. Stanley G. Katz, a primary treating physician

6    for plaintiff's workers' compensation case, who opined that plaintiff could return

7    to work with certain limitations (*i.e.*, no lifting over 25 pounds, avoid overhead

8    work or reaching above the head, lifting above shoulder level, repetitive bending,

9    stooping and twisting, limited repetitive head turning, and avoid forceful pushing,

10   pulling, twisting, or torquing with the upper extremities) (AR 28, 309-18; see also

11   AR 465-66, 475-76, 485, 614, 619, 621); (2) Dr. Aaron Allen, who conducted a

12   Qualified Medical Evaluation for plaintiff's workers' compensation case and

13   found similar functional limitations (AR 28, 378); and to a lesser degree (3) Dr.

14   Anh Tat Hoang, a state-agency examining physician, and Dr. Bill F. Payne, a

15   state-agency reviewing physician, both of whom essentially opined that plaintiff

16   could "lift and/or carry 50 pounds occasionally and 25 pounds frequently . . . stand

17   and/or walk six hours . . . [and] sit six hours in an eight-hour workday" (AR 28-29,

18   385-89, 398-405). The opinions of Dr. Katz, Dr. Allen, and Dr. Hoang were

19   supported by the physicians' independent examinations of plaintiff (AR 311-16

20   [Dr. Katz], 376-77 [Dr. Allen], 386-88 [Dr. Hoang]), and thus, without more,

21   constituted substantial evidence upon which the ALJ could properly rely to reject

22   Dr. Schilling's Opinions. See, e.g., Orn, 495 F.3d at 632 (examining physician

23   may constitute substantial evidence when it rests on "independent clinical findings

24   that differ from the findings of the treating physician") (citation and quotation

25   marks omitted). Dr. Payne's opinions also constituted substantial evidence

26   supporting the ALJ's decision since they were supported by the other medical

27   evidence in the record as well as the opinions and underlying independent

28   examinations of Drs. Katz, Allen, and Hoang. See Tonapetyan v. Halter, 242 F.3d

1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining
doctors may serve as substantial evidence when consistent with independent
clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d
1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be
discounted and may serve as substantial evidence when they are supported by
other evidence in the record and are consistent with it").

Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

**B.    The ALJ Properly Evaluated Plaintiff's Credibility**

**1.    Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other
non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d
597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony
regarding subjective pain or symptoms is credible, an ALJ must engage in a
two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.
2007). "First, the ALJ must determine whether the claimant has presented
objective medical evidence of an underlying impairment 'which could reasonably
be expected to produce the pain or other symptoms alleged.'" Id. (quoting
Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of
malingering, 'the ALJ can reject the claimant's testimony about the severity of
[his] symptoms only by offering specific, clear and convincing reasons for doing
so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the
ALJ 'must specifically identify what testimony is credible and what testimony
undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972
(9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be
sufficiently specific to allow a reviewing court to conclude the ALJ rejected the
claimant's testimony on permissible grounds and did not arbitrarily discredit the
claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

1   To find a claimant not credible, an ALJ must rely either on reasons
2   unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal
3   contradictions in the claimant's statements and testimony, or conflicts between the
4   claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work
5   record, unexplained or inadequately explained failure to seek treatment or to
6   follow prescribed course of treatment).  <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d
7   at 883; <u>Burch</u>, 400 F.3d at 680-81; SSR 96-7p.  Although an ALJ may not
8   disregard a claimant's testimony solely because it is not substantiated
9   affirmatively by objective medical evidence, the lack of medical evidence is a
10  factor that the ALJ can consider in his or her credibility assessment.  <u>Burch</u>, 400
11  F.3d at 681.

12  Questions of credibility and resolutions of conflicts in the testimony are
13  functions solely of the Commissioner.  <u>Greger</u>, 464 F.3d at 972.  Accordingly, if
14  the ALJ's interpretation of the claimant's testimony is reasonable and is supported
15  by substantial evidence, it is not the court's role to "second-guess" it.  <u>Rollins v.</u>
16  <u>Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

17           **2.     Analysis**

18  Plaintiff contends that the ALJ inadequately evaluated the credibility of his
19  subjective complaints.  (Plaintiff's Motion at 8-12).  The Court disagrees.

20  First, as the ALJ noted, although plaintiff sought benefits for an alleged
21  inability to work due to disability, in his disability reports plaintiff stated that he
22  was still working.  (AR 24) (citing Exhibits 2E at 2 [AR 128], 7E at 4 [AR 166]).
23  Contrary to plaintiff's unsupported assertion that "[i]nconsistencies alone do not
24  amount to substantial evidence to support [the ALJ's] credibility determination"
25  (Plaintiff's Motion at 11), the ALJ was entitled to consider such conflict in
26  plaintiff's statements in determining whether plaintiff's overall claim of disabling
27  ///
28  ///

12

1   symptoms should be believed.[6]  See Tonapetyan, 242 F.3d at 1148 ("In assessing
2   the claimant's credibility, the ALJ may use 'ordinary techniques of credibility
3   evaluation,' such as considering the claimant's reputation for truthfulness and any
4   inconsistent statements in her testimony.") (citations omitted); Fair, 885 F.2d at
5   604 n.5 ("[I]f a claimant . . . is found to have been less than candid in other aspects
6   of his testimony, that may be properly taken into account in determining whether
7   or not his claim of disabling pain should be believed.").

8          Second, the ALJ properly discounted the credibility of plaintiff's subjective
9   complaints as inconsistent with plaintiff's daily activities and other conduct.  See
10  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between
11  the claimant's testimony and the claimant's conduct supported rejection of the
12  claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999)
13  (inconsistencies between claimant's testimony and actions cited as a clear and
14  convincing reason for rejecting the claimant's testimony).  For example, as the
15  ALJ noted, contrary to plaintiff's allegations of disabling pain, plaintiff stated in
16  his function report that he was able to travel by walking or driving a car without
17  assistance, go shopping in stores or by computer for groceries or automobile parts,
18  and spend time with others at social gatherings and "dancing at the clubs."  (AR
19  25) (citing Exhibit 4E at 4-5 [AR 154-55]).  In addition, plaintiff told an
20  examining psychiatrist that plaintiff could dress and bathe himself and was able to
21  take a bus to get around.  (AR 25) (citing Exhibit 15F at 3 [AR 392]).
22  ///

23

24          [6]Plaintiff suggests that the ALJ erroneously failed to confront plaintiff with any perceived
25  inconsistency before addressing it in the administrative decision.  (Plaintiff's Motion at 11).
    Nonetheless, the immigration case plaintiff cites, i.e., Soto-Olarte v. Holder, 555 F.3d 1089, 1092
26  (9th Cir. 2009), does not support application of such a requirement in the Social Security context.
    See, e.g., Gonzales v. Colvin, 2014 WL 4656470, *10 n.7 (C.D. Cal. Sep. 17, 2014) (rejecting
27  identical argument when raised by plaintiff's counsel on behalf of different Social Security
    claimant); Montelongo v. Colvin, 2014 WL 4627245, *10 (E.D. Cal. Sept. 16, 2014) (same).
28

1    While plaintiff correctly suggests that a claimant "does not need to be

2  'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044,

3  1050 (9th Cir. 2001) (citation omitted) (Plaintiff's Motion at 11), this does not

4  mean that an ALJ must find that a claimant's daily activities demonstrate an ability

5  to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to

6  discount the credibility of conflicting subjective symptom testimony.  See Molina,

7  674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the

8  claimant reports participation in everyday activities indicating capacities that are

9  transferable to a work setting . . . [e]ven where those activities suggest some

10  difficulty functioning. . . .") (citations omitted).  Here, the ALJ properly

11  discounted the credibility of plaintiff's subjective-symptom testimony to the extent

12  plaintiff's daily activities and other conduct were inconsistent with a "totally

13  debilitating impairment."  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130

14  (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal

15  needs, prepare easy meals, do light housework and shop for some groceries . . .

16  may be seen as inconsistent with the presence of a condition which would

17  preclude all work activity") (citing Fair, 885 F.2d at 604).

18    Third, the ALJ properly discounted the credibility of plaintiff's subjective

19  complaints as inconsistent with the overall "routine and/or conservative treatment"

20  plaintiff received.  (AR 25); see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir.

21  2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

22  claimant's testimony regarding severity of an impairment."), cert. denied, 552 U.S.

23  1141 (2008) (citation omitted).  For example, the ALJ noted that no physician has

24  recommended surgery for plaintiff's back, and that plaintiff's condition has been

25  generally addressed with conservative treatment and medication.  (AR 25-27; AR

26  219-26 (treatment with hot packs, ultrasound, spinal manipulation, interferential

27  medium frequency electrical stimulation); AR 259 (treatment plan included "anti-

28  inflammatory and non-narcotic medications").  Although, as the ALJ noted, on

14

1   one occasion one physician recommended that plaintiff receive stronger

2   medication (AR 27) (citing Exhibit 23F at 35), as the ALJ noted, "[s]ubsequent

3   treating notes throughout 2011 show that [plaintiff] was prescribed Tylenol with

4   Codein and [advised] to continue his current medications."  (AR 27; see AR 439,

5   443, 445, 448,450, 456, 458, 461, 465, 534-35, 537, 539, 541, 544, 547, 549, 552,

6   569, 571, 573, 575, 578, 580, 586, 1053).  While plaintiff suggests that the

7   medical evidence reflects that he received more "aggressive treatment" (Plaintiff's

8   Motion at 11-12), the Court will not second-guess the ALJ's reasonable

9   determination to the contrary, even if the evidence could give rise to inferences

10   more favorable to plaintiff.

11        Finally, the ALJ also properly discounted plaintiff's credibility, in part, due

12   to plaintiff's "unexplained or inadequately explained failure to seek treatment

13   [consistent with the alleged severity of subjective complaints] . . . ."  Molina v.

14   Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations and internal quotation

15   marks omitted); see SSR 96-7p at *8 ("[Claimant's] statements may be less

16   credible if the level or frequency of treatment is inconsistent with the level of

17   complaints. . . .").  For example, with respect to plaintiff's mental impairment, the

18   ALJ noted that (1) there was no evidence in the record that plaintiff had been

19   hospitalized for psychological symptoms; and (2) a state-agency examining

20   psychiatrist had opined, in part, that although plaintiff was not receiving

21   psychiatric treatment, if he did, plaintiff "should be significantly better in less than

22   six months."  (AR 25) (citing Exhibit 15F at 5 [AR 394]).

23        Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

24   ///

25   ///

26   ///

27   ///

28   ///

1    **V.    CONCLUSION**

2         For the foregoing reasons, the decision of the Commissioner of Social

3    Security is affirmed.

4         LET JUDGMENT BE ENTERED ACCORDINGLY.

5    DATED:   October 1, 2014

6                                        _____/s/_____

7                                        Honorable Jacqueline Chooljian
                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        16